STATE OF VERMONT

ENVIRONMENTAL COURT

|                                                        |     |                          |
| ------------------------------------------------------ | --- | ------------------------ |
|                                                        | }   |                          |
| Appeal of T & M Construction & Development Corp.        | }   | Docket No. 172-10-03 Vtec |
|                                                        | }   |                          |
|                                                        | }   |                          |

Decision and Order

Appellant T & M Construction & Development Corp. appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Swanton, denying Appellant's application for a variance from both side setback requirements for an existing narrow lot. Appellant-Applicant is represented by Vincent A. Paradis, Esq.; Interested persons Lonija Vitols, John F. McEnrue, John W. Kralik, David Reissig, Gene Prouty, Thomas K. Pierce, Robert L. Barker and Carolyn Wheeler appeared and represented themselves. The Town of Swanton did not enter an appearance in this appeal.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken at the conclusion of the hearing with the parties and their representatives. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence, as illustrated by the site visit, and of the written memoranda and requests for findings filed by the

parties, the Court finds and concludes as follows.

Appellant-Applicant T & M Construction & Development Corp. owns a small parcel of land, greater than an eighth of an acre in size, located on the shore of Lake Champlain at 174 Maquam Shore Road (Vermont Route 36), in the Shoreland Recreation zoning district of the Town of Swanton. The lot has existed in its present size and shape since before the adoption of zoning in Swanton. The lot is 43.7 feet in width at its road frontage, tapering slightly to 42 feet at its lake frontage. Its northerly side lot line is 163 feet in length, and its southerly side lot line is 153 feet in length. It slopes gently from the roadside elevation towards the lake, and then falls off abruptly to the lake elevation approximately 32½ feet from the lake.

In the Shoreland Recreation zoning district (Table 2.2(E)(1)), an existing lot of this size requires a 35-foot front setback from the street line, a rear setback[1] of 20 feet, and a 15-foot setback to each side. Distances on a lot are customarily measured in a horizontal plane, for example, as specified in the Land Use and Development Regulations

---

[1] The setback exceptions for existing small lots in Table 2.2(E)(1) state that they apply "notwithstanding dimensional standards under subsection (D)." Subsection D contains the minimum front (75-foot), side (50-foot) and rear (50-foot) setbacks that would otherwise apply, and also contains a minimum setback of 50 feet from Lake Champlain. In the present case, the lot's rear lot line is Lake Champlain. Appellant-Applicant proposes to meet a 20-foot setback to the lake, under the exception in Table 2.2(E)(1) for the rear setback.

under the definition of the term "lot depth" in Article 10. Appellant-Applicant's proposal provides more than the required front setback of 35 feet and provides more than the required rear setback of 20 feet.

The lot is served by municipal water supply, and by an approved septic system with sufficient capacity to serve a three-bedroom residence. In 2002, Appellant received a building permit to install a 12' x 68' single-family mobile home on the lot, oriented to comply with all the required setbacks.

Instead of installing the permitted mobile home on the lot, Appellant-Applicant has applied in the present application for a variance of five feet on each side from the 15-foot side setback applicable to this property, to construct a stick-built, wheelchair-accessible[2], single-family house on a 22' x 40' footprint. The house is proposed to be 2½ stories in height and to have three bedrooms. However, the exterior elevations, design or appearance of the house, and particularly its height and appearance within the five feet of side setback on each side for which the variance is sought (the 'variance setback areas'), was not proposed in this application nor presented in evidence.

In order to obtain a variance any application must meet all five requirements of

---

[2] While Appellant-Applicant is correct that accessibility is a policy goal for both public and residential buildings in Vermont (see 21 V.S.A. §§271 et seq. and §286), it is not required for premanufactured homes. In addition, we note that residential entry stairs and ramps do not require a zoning permit. §9.1(A)(2).

§9.4(A). Two of those five criteria for a variance, §§9.4(A)(1) and (3), are not at issue in this appeal, as the ZBA found that they had been met and no party appealed. However, the ZBA denied the variance based on the failure of the application to meet the other three requirements for a variance, §§9.4(A)(2), (4) and (5), making those criteria at issue in this appeal.

The 8' x 40' recreational travel trailer now on the site is not designed for year-round use, is not wheelchair-accessible, and is not permanently affixed to the real estate or permanently connected to the municipal water supply or the on-site septic system. Unlike a residential mobile home, it does not have or qualify for a federal Housing and Urban Development certification that it is acceptable for residential use. The fact that this recreational trailer will fit on the site without the need for a side setback variance therefore does not demonstrate a reasonable use of the property without the need for a variance.

Unlike the foundation proposed in the present application, the existing concrete pad on which the recreational travel trailer is located does not follow the slope of the lot. Such a pad would also be necessary to create a level surface for the placement of the approved mobile home or any other prefabricated mobile home on the site. The concrete pad raises the central portion of Appellant-Applicant's lot above the ground level of the two lots on either side of it, causing the potential for ground-level drainage onto the neighboring

lots.[3]  Appellant-Applicant proposes to remove the existing concrete pad and to reduce the grade at both side setbacks to match the grade of the two adjacent properties, to eliminate ground-level drainage onto the neighboring lots.

However, Appellant-Applicant proposes a 2½-story house, yet has not provided any elevations, plan or roof design of a proposed building, although it is proposed to be two stories high at the eaves within the side setback variance area, with a total height from 29 to 33 feet, and not more than the 35-foot height limit in the zoning regulations.  Without presenting evidence as to the roof orientation, type, and drainage, and as to the bulk of the building, Appellant-Applicant has not met its burden of proof to show that the volume or shape of the proposed house within the setback variance areas would not conduct drainage of water onto the adjacent properties and thereby impair their appropriate use, or to show that its bulk would not loom over the adjacent properties and thereby impair their appropriate use and reduce their access to solar energy.  Accordingly, the variance must be denied, without prejudice, as Appellant-Applicant has not shown that it meets §9.4(A)(4).

---

[3]  Any damage from such drainage in the past is beyond the scope of this proceeding.

That is, a house with the proposed footprint could be designed with a flat roof, or with a peaked or gambrel roof aligned north to south with the drainage to the east and west, or with a peaked or gambrel or A-line roof aligned east to west with the drainage to the north and the south, or with a shed roof sloping and draining to the east. A house with the proposed footprint also could be designed in any number of different ways, for example so that it is as much as 2½ stories high all the way out to the edge of the footprint, with a flat or shed roof, or so that it is 2½ stories at the center of a peaked or gambrel or A-line roof and slopes down to a lower height within the setback variance areas, or as a group of sections with a higher section nearer the road and one or more lower sections nearer the adjoining houses. The drainage designed for a house with the proposed footprint could result in drainage from the roof onto the adjacent properties, or through gutters conducting drainage from the roof towards the lake, or even with a shallow internal valley, rather than a peak, to conduct drainage without affecting the neighboring properties. Without a design to consider in relation to the variance criteria, the Court cannot make a positive findings that it will meet the variance criterion regarding the effect of the proposal on the neighboring properties. §9.4(A)(4)

The available building envelope on the property, without a sideline setback variance, would only allow construction of a 13-foot-wide house in the front of the lot, tapering to approximately 12 feet wide at the rear of the lot (due to the tapered shape of the lot), or

the placement of a 12-foot-wide mobile home.[4]  As these are the maximum exterior dimensions without some variance, the interior finished width of even an open-plan space would be only about 10½ feet.  It is probable that some side setback variance is necessary to make reasonable residential use of the property, whether for ramp landings and a 14-foot-wide mobile home or for some design of stick-built home.  §9.4(A)(2). However, based on the present evidence, Appellant-Applicant has not shown that the requested variance is the minimum necessary to obtain relief, and particularly has not shown that a two-story height within the setback variance area is necessary. §9.4(A)(5).

---

[4]  The current standard residential pre-manufactured mobile home has a uniform width of 14 feet  and is not commonly designed with an accessible interior.

The property adjacent to Appellant-Applicant's property to the north, at 170 Maquam Shore Road, contains a stick-built, year-round single-family residence. A shed extends into the side setback adjacent to Appellant-Applicant's property. The property adjacent to Appellant-Applicant's property to the south, at 178 Maquam Shore Road, contains a concrete-block, year-round single-family residence. A preexisting garage is located within the side setback adjacent to Appellant-Applicant's property and partially screens the 178 Maquam Shore Road house from Appellant-Applicant's property, depending on the height, design and orientation of the house that would be built within the proposed footprint.

Many of the other properties along Maquam Shore Road in the area are relatively small lots containing at least existing accessory structures extending into the sideline setback area. Of the 141 lots on Maquam Shore Road for which data was presented, Appellant-Applicant's lot is the third smallest lot. Of the 21 lots closest to the property, Appellant's lot is the smallest lot. On some of those lots, some of the existing houses do not meet the setback requirements. There are no mobile homes within the 21 closest lots. The characteristic housing types in the neighborhood are predominantly stick-built or concrete block year-round or seasonal (camp) residences of one or two stories.

Depending on the design and height of the proposed structure and especially the height within the side setback variance areas, it is possible that the requested variance

would not alter the essential character of the neighborhood if the height at least within the side setback variance areas did not exceed a single story, and if the bulk or volume of the remainder of the house were designed so as to be compatible with the other neighborhood houses and camps.  An appropriately-designed and -sized stick-built house might be as or more compatible with the character of the neighborhood than a mobile home, even though a 14-foot-wide mobile home with its associated ramps and landings would occupy a smaller volume of the setback variance area.  However, without a design and elevations for a proposed structure within the proposed footprint, the Court cannot find that the proposed setback variance will meet §9.4(A)(4).

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the variance requested by Appellant-Applicant is DENIED, without prejudice to any future application showing the design or height of the proposed structure within the requested variance setback area, so that the potential effect of the proposal on the appropriate use or development of adjacent property and the other requirements of §§9.4(A)(2), (4) and (5) could be evaluated.

Dated at Berlin, Vermont, this 8th day of August, 2005.

_____

Merideth Wright
Environmental Judge